IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANCO RIBEIRO and DEANNA RIBEIRO, as individuals and as next friends and biological parents of LUCAS RIBEIRO, an infant, <br><br> Plaintiffs, <br><br> vs. <br><br> BABY TREND, INC.; MARK SEDLACK; MILLENIUM DEVELOPMENT CORP.; INDIANA MILLS & MANUFACTURING INC.; LERADO GROUP CO., LTD.; LERADO GROUP (HOLDING) COMPANY LTD.; LERADO (ZHONG SHAN) INDUSTRIAL CO., LTD.; LERADO CHINA LIMITED; LERADO H.K. LIMITED; HOLMBERGS SAFETY SYSTEM HOLDING AB f/k/a HOLMBERGS CHILDSAFETY HOLDING AB a/k/a HOLMBERGS; CHILDSAFETY AB d/b/a HOLMBERGS; HOLMBERGS CHILDSAFETY AB f/k/a KENDRION HOLMBERGS AB a/k/a HOLMBERGS SAFETY SYSTEM HOLDING AB d/b/a HOLMBERGS; and GNOSJOGRUPPEN AB f/k/a KENDRION AUTOMOTIVE METALS AB d/b/a HOLMBERGS, <br><br> Defendants. | Case No. 8:12CV204 <br><br><br><br><br><br><br><br><br> MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOREL INDUSTRIES, INC.'S MOTION TO DISMISS THE SEVENTH AMENDED COMPLAINT |

## INTRODUCTION

Pursuant to F. R. Civ. P. 12(b)(2), the Court should dismiss the Seventh Amended Complaint (the "SAC") with respect to Defendant Dorel Industries, Inc. ("Dorel"). This Canada-based holding company does not have the requisite minimum contacts with the State of Nebraska

such that this Court is authorized to exercise personal jurisdiction over it consistent with the Due Process Clause of the Fourteenth Amendment.

## STATEMENT OF ISSUE

Whether, pursuant to F. R. Civ. P. 12(b)(2), this Court should dismiss the SAC against Dorel because it has insufficient contacts with the State of Nebraska to establish personal jurisdiction consistent with the Due Process Clause of the Fourteenth Amendment.

### A.  Plaintiffs' Allegations in the SAC.

#### 1. The Car Seat and Alleged Injury

Plaintiffs allege that they are Nebraska residents who purchased a used Baby Trend FLEC-LOC Infant Cr Seat Model No. 6325 ("Car Seat") in Kearney, Nebraska, to "hold and transport their twin infant sons, Lucas and Alex." (SAC ¶¶ 1, 3, 12). Plaintiffs contend that on May 27, 2011, "the Car Seat's restraint system strangled and asphyxiated Lucas Ribeiro causing him to suffer catastrophic permanent brain and related neurological injuries." (SAC ¶ 14).

#### 2. Plaintiffs' Deficient Jurisdictional Allegations

Plaintiffs allege that Dorel is liable to the Plaintiffs as "successors in interest to Lerado." (SAC ¶ 8). Plaintiffs contend that Dorel is a Canada corporation that "conduct[s] business throughout the United States, including Nebraska." (SAC ¶ 8).

#### 3. Plaintiffs' Allegations as to Dorel

Plaintiffs argue that Dorel is liable as a successor in interest to Lerado, "and each and every action or inaction applicable to Lerado in this lawsuit is attributable to" Dorel. (SAC ¶ 8). Plaintiffs do not state which Lerado defendant they are referring to or which Lerado entity Dorel is succeeding.

Plaintiffs generally allege that all of the Lerado defendants acted "jointly and in concert" with other defendants to: (1) "defectively design, manufacture, test and incorporate into the subject Car Seat a concave bottom that permitted the Car Seat to rock back and forth excessively when used in its intended manner;" (2) "defectively design, manufacture and incorporate into the Car Seat a 5-point harness system that utilized a 'puzzle buckle,' that in normal use caused a deceptive false latch click;" and (3) "fail to appropriately test the Car Seat." (SAC ¶¶ 15-17). Plaintiffs do not call out each Lerado company to definitively state how each was involved in the car seat design, manufacture, and testing, and they do not describe how Dorel has contributed to these allegations.

Based on these allegations, Plaintiffs have asserted the following seven causes of action against the five separate Lerado Defendants, and therefore again Dorel: (1) Negligence, (2) Strict Liability—Design Defect, (3) Strict Liability—Failure to Warn, (4) Breach of Express Warranty, (5) Breach of the Implied Warranty of Merchantability, (6) Breach of Implied Warranty Particular Purpose, and (7) violation of the Magnuson Moss Act. (SAC ¶¶ 18-63). The SAC also asserts that the Maxi Miliaan B.V. and Dorel are liable as successors to the Lerado Defendants as Count VIII.

### B. Dorel has no connection to the State of Nebraska and No Involvement in this Case.

Dorel has no presence in or direct contact with Nebraska. As shown by the declaration of Frank Rana, the Vice-President, Finance and Assistant Secretary for Dorel, Dorel is a Canadian holding company that is based in Montreal, Quebec. Ex. A at ¶ 5. Further, it had no involvement in the production, design, or sales of the car seat in question. Ex. A at ¶¶ 11–13.

Dorel is not licensed to do business in the State of Nebraska, and it does not have any offices or affiliated corporate entities within the State. Further, it has not designated an agent for service of process within the State of Nebraska, nor has it assigned employees or representatives

to conduct business in the State of Nebraska, including marketing, financing, servicing, distribution, or resale activities. It has never sent representatives to Nebraska for business purposes. It does not solicit business from consumers in the State of Nebraska or advertise within the State. It has no financial ties to the State. The lack of contacts with the State of Nebraska makes an attempt to assert personal jurisdiction to this Defendant in this Court improper and the SAC should be dismissed as to Dorel.

## ARGUMENT

"To survive a motion to dismiss for lack of personal jurisdiction, **the plaintiff bears the burden** of demonstrating, by a *prima facie* showing, that personal jurisdiction exists." *Centurion Wireless Techs., Inc. v. Hop-On Commc'ns, Inc.*, 342 F. Supp. 2d 832, 835 (D. Neb. 2004) (quoting *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998)) (emphasis added). The plaintiffs' *prima facie* showing "must be tested, not by the pleading alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007) (quotation omitted).

To determine whether it has personal jurisdiction over a nonresident defendant, the Court considers whether (1) the requirements of the Nebraska long-arm statute are satisfied and (2) whether the exercise of jurisdiction over the defendant will violate the Due Process Clause of the Fourteenth Amendment. *Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd*, 89 F.3d 519, 522 (8th Cir. 1996). While the long-arm statute is interpreted liberally, jurisdiction over non-resident defendants is not unbridled and the Court must determine whether the federal due process standards are satisfied. *See Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001) (discussing Neb. Rev. Stat. § 25-536). Thus, Nebraska courts have interpreted the Nebraska long-arm statute to extend personal jurisdiction over nonresident defendants as far

as the Due Process Clause of the U.S. Constitution allows; therefore, this Court need only determine whether asserting personal jurisdiction would offend constitutional limits. *See, e.g., Wagner v. Unicord Corp.*, 247 Neb. 217, 221 (1995); *DominaLaw Grp., PC, LLO v. Bernstein*, No. 8:12cv58, 2012 U.S. Dist. LEXIS 54862, at *6 (D. Neb. Apr. 19, 2012); *Applied Underwriters, Inc. v. Empo Corp.*, No. 4:07cv3145, 2007 U.S. Dist. LEXIS 75452, at *8 (D. Neb. Oct. 10, 2007).

It is well-settled that to avoid violating the Due Process Clause, nonresident defendants must have "minimum contacts" with the forum state such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). The nonresident defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In assessing a defendant's reasonable anticipation, it is essential that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "Purposeful availment" means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party. *Id.* "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003). Thus in applying these factors, the central inquiry is the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

The nature of any defendant's contacts with Nebraska determines whether general or specific jurisdiction exists. *See Omaha Tribe of Neb. v. Barnett*, 245 F. Supp. 2d 1049, 1053-54 (D. Neb. 2003) (noting that the existence of general or specific jurisdiction hinges upon the nature of defendant's contacts with forum state). General jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose, while specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a forum state. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994).

Because Plaintiffs have not alleged and cannot establish general or specific personal jurisdiction as to this Defendant, this case should be dismissed as to Dorel.

A. **There is no general jurisdiction as to Dorel.**

A court may exercise general jurisdiction over a nonresident defendant "where the contacts between the defendant and the forum state are 'continuous and systematic' even if there is no relationship between the contacts and the cause of action." *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *see also, e.g., Ottis v. Fischer Price*, 627 F. Supp. 2d 1040, 1045 (D. Neb. 2008) (two of the defendants had no "continuous and systematic" presence in Nebraska sufficient to establish general jurisdiction over them where they did not travel regularly to Nebraska, did not maintain offices there, and did not conduct any business there); *see also Romeo Entet Grp., Inc. v. Showing Animals Respect and Kindness, Inc.*, 643 F. Supp. 2d 1109, 1113 (D. Neb. 2009); *J.N.F.S. Eng'g Co., supra*, No. 4:06cv3245, 2007 U.S. Dist. LEXIS 681, at *11 (D. Neb. Jan. 3, 2007) (defendant had attenuated contacts with Nebraska when it entered into a contract with plaintiff-Nebraska company, which had submitted the bid to defendant in Georgia, the contract was negotiated by phone and email, the contract was formed in Georgia,

defendant knew that plaintiff monitored performance from Nebraska, there were phone calls between defendant's employees in Georgia and plaintiffs employees in Nebraska, and defendant mailed five checks to plaintiff in Nebraska as payment for work performed in the State of Washington).

In addition, *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846 (2011) confirms the conclusion that this Court cannot exercise general jurisdiction over Dorel. In *Goodyear,* Goodyear USA's foreign subsidiaries were not registered to do business in the forum state, had no place of business, employees or bank accounts in the forum state; did not design, manufacture or advertise their products in the forum states; and did not solicit business in the forum state, nor did it sell or ship tires to customers in the forum state. *See id.* at 2852. A small number (tens of thousands out of millions) of tires manufactured in France by petitioner were distributed within the forum by the petitioner's United States affiliates. *See id.* The Supreme Court, however, held that Goodyear USA's foreign subsidiaries' contacts with the forum were insufficient to confer general jurisdiction.

Likewise, in *Daimler AG v. Bauman,* 134 S. Ct. 746 (2014), the United States Supreme Court considered the issue of whether it was a violation of the Due Process Clause for the court to exercise general jurisdiction over a German corporation whose an indirect U.S. subsidiary (incorporated in Delaware, with its principal place of business in New Jersey) imported and distributed the corporation's products into California, the forum state. The action was filed in California by Argentinean residents who claimed that human rights were violated in Argentina. *See id.* at 750. The parties' argument focused on the interaction of general jurisdiction and agency principles. The Supreme Court held that even if it was assumed that the subsidiary was "at home" in California, and it was assumed that the subsidiary's

contacts were imputable to Daimler, "there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 760.

Plaintiffs cannot demonstrate that Dorel continuously and systematically availed itself of the privilege of conducting activities in Nebraska. As such, general jurisdiction over Dorel simply does not exist. *See Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.2d 110, 1103 (8th Cir. 1996) (holding that general jurisdiction was not established where defendant had no offices, inventory, bank accounts, real estate, personal property, employees or agents in the forum state).

**B.     There is no Specific Jurisdiction for Dorel.**

Because Dorel had no continuous and systematic contacts with Nebraska to demonstrate general jurisdiction, the Court must next evaluate whether specific jurisdiction exists. "Specific jurisdiction can only be found if the controversy is related to or arises out of the defendant's contacts with the forum state." *Johnson*, 444 F.3d at 956 (internal quotations and citations omitted). To determine whether a defendant's contacts with the forum state are sufficient to support an exercise of specific jurisdiction consistent with due process, the plaintiff must show that a "substantial connection" exists between the defendant and Nebraska. *Porter v. Berall*, 293 F.2d 1073, 1075 (8th Cir. 2002).

The Eighth Circuit has set forth five factors to be considered by courts to determine whether the constitutional requirements for personal jurisdiction have been satisfied: "(1) the nature and quality of the contacts with the forum state; (2) the quality of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Id.* at 1076. The fourth and fifth factors are of secondary importance and are not determinative. *Land-O-Nod Co. v.*

*Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983).

### 1 – 3. Dorel's Contacts with Nebraska are Insufficient to Meet the First Three Constitutional Requirements of *Land-Nod Co.*

A nonresident defendant's contacts with the forum state, not the defendant's contact with the plaintiffs, determine whether personal jurisdiction exists. *Aaron Ferer & Sons Co. v. Am. Compressed Steel Co.*, 564 F.2d 1206, 1211 (8th Cir. 1977). As described above, however, Dorel has not engaged in such activities either in the State of Nebraska or directed to the State of Nebraska. Therefore, this Court cannot exercise specific jurisdiction over Dorel.

Importantly, even defendants that design, manufacture or introduce into the market an allegedly defective product, are **not** subject to a court's jurisdiction simply by virtue of their product reaching the forum state. For example, under the United States Supreme Court's holding in *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 111-13 (1987), the mere knowledge that a product might reach the forum state, or the mere placement of the product into the stream of commerce, without more, is insufficient to support an exercise of personal jurisdiction over a nonresident defendant. There must be "additional conduct" that is "purposefully directed" to the forum state by which the nonresident defendant manifests an intent to serve that market. *Id.* In *Asahi,* the Supreme Court specifically noted that Asahi "did not create, control or employ the distribution system that brought its valves to California." *Id.* This is also true here. (Ex. A).

A recent plurality opinion in *J. McIntyre Machinery, Ltd. v. Nicastro,* 131 S. Ct. 2780 (2011), clarified and followed Justice O'Connor's lead plurality decision in *Asahi.* In *J. McIntyre,* the Supreme Court held that Nicastro failed to establish that J. McIntyre engaged in conduct purposefully directed at the forum state finding that Nicastro showed only that: (1) a distributor agreed to sell J. McIntyre's machines in the United States; (2) J. McIntyre attended

trade shows in several states through the United States, but never in New Jersey, the forum state; and (3) up to four products reached New Jersey. *See id.* at 2790. Notably, J. McIntyre, a British manufacturer, did not have any office in the forum state, never paid taxes or owned property in the forum states, and did not advertise in the forum state or send any employees to the forum state. *See id.*

Here, the bald allegation that Dorel "conduct[s] business throughout the United States, including Nebraska," is insufficient to establish personal jurisdiction over Dorel. (SAC ¶ 8.) Notably, Plaintiffs do not allege that Dorel had **any** contacts with Nebraska. (*See generally* SAC). Rather, Plaintiffs vaguely allege Dorel is a successor to Lerado. (SAC ¶ 8). But, like in *J. McIntyre*, Dorel did not have any offices in Nebraska, never owned property or paid taxes in Nebraska, and never advertised in or sent employees to Nebraska. Accordingly, Plaintiffs cannot establish that Dorel had continuous and systematic contact with Nebraska sufficient to confer personal jurisdiction. *See Burger King*, 471 U.S. at 475.

### 4. Nebraska's Interest in Providing a Forum is Outweighed by Other Factors.

Nebraska's "interest in providing its residents with a forum cannot make up for the absence of minimum contacts." *Digi-Tel Holdings, Inc.*, 89 F.3d at 525. It is conceded that Nebraska does have an interest in providing its residents with a forum against those defendants who have sufficient minimum contacts with Nebraska. Here, however, based on the lack of minimum contacts of Dorel with the State of Nebraska, Nebraska has less interest in providing a forum for an action against Dorel based simply on Plaintiffs' residence in Nebraska. Other defendants that had involvement in the design, manufacture, or marketing have admitted to the jurisdiction of the Court in this case, so Nebraska's interest can be satisfied without "offending traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. at

316.

### 5. Dorel Should Not be Forced to Defend a Lawsuit in Nebraska Where It Would be Inconvenient.

Since Dorel has no direct connection with the baby seat, the incident, or the Plaintiffs, requiring Dorel to submit to jurisdiction is very inconvenient when Dorel is a Canadian corporation.

### CONCLUSION

The exercise of personal jurisdiction must be "fair and reasonable" so as to comport with notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 477–78. The United States Supreme Court has counseled: "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Ashai*, 480 U.S. at 115 (citation omitted).

Here, it is unnecessary for this Court to analyze the reasonableness of exercising personal jurisdiction over Dorel because Dorel has no "minimum contacts" with the State of Nebraska. Forcing Dorel to defend this lawsuit in Nebraska—where they have had no minimum contacts—is unfair and unreasonable. Dorel will bear substantially more costs in litigation and travel, and will suffer great inconvenience and interruption to its business. In sum, the application of the "minimum contacts" test compels the conclusion that exercising personal jurisdiction over Dorel in Nebraska is improper and violative of due process.

Based upon the foregoing, Dorel respectfully requests that the Court dismiss it from the Seventh Amended Complaint.

DATED this 15th day of March, 2016.

                              Respectfully submitted,

By: _____
John C. Gray, No. AT0002938
Jessica A. Uhlenkamp, No. AT0012404
Heidman Law Firm, L.L.P.
1128 Historic Fourth Street
P.O. Box 3086
Sioux City, IA 51102-3086
(712) 255-8838 (Telephone)
(712) 258-6714 (Facsimile)
John.Gray@heidmanlaw.com
Jessica.Uhlenkamp@heidmanlaw.com

ATTORNEYS FOR DEFENDANT
DOREL INDUSTRIES, INC.

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause by depositing the same in the U.S. Mail, postage prepaid, to their respective mailing addresses disclosed on the pleadings or, in the event the party is represented by counsel, to their counsel; or notice of the filing of this instrument was sent by e-mail, via CM/ECF, to all parties on the service list who have registered to receive service by e-mail over CM/ECF, on March, __15__, 2016.

_____
Jessica A. Uhlenkamp

626640

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANCO RIBEIRO and DEANNA RIBEIRO, as individuals and as next friends and biological parents of LUCAS RIBEIRO, an infant, <br><br> Plaintiffs, <br><br> vs. <br><br> BABY TREND, INC.; MARK SEDLACK; MILLENIUM DEVELOPMENT CORP.; INDIANA MILLS & MANUFACTURING INC.; LERADO GROUP CO., LTD.; LERADO GROUP (HOLDING) COMPANY LTD.; LERADO (ZHONG SHAN) INDUSTRIAL CO., LTD.; LERADO CHINA LIMITED; LERADO H.K. LIMITED; HOLMBERGS SAFETY SYSTEM HOLDING AB f/k/a HOLMBERGS CHILDSAFETY HOLDING AB a/k/a HOLMBERGS; CHILDSAFETY AB d/b/a HOLMBERGS; HOLMBERGS CHILDSAFETY AB f/k/a KENDRION HOLMBERGS AB a/k/a HOLMBERGS SAFETY SYSTEM HOLDING AB d/b/a HOLMBERGS; GNOSJOGRUPPEN AB f/k/a KENDRION AUTOMOTIVE METALS AB d/b/a HOLMBERGS, HOLMBERGS SAFETY SYSTEM HOLDING AB, GNOTEC REFTELE AB, MAXI MILIAAN B.V. and DOREL INDUSTRIES, INC. <br><br> Defendants. | Case No. 8:12CV204 <br><br><br><br><br><br><br><br> DECLARATION |

I, Frank Rana, under the penalty of perjury state:

1. I am an adult over the age of eighteen years and competent to testify regarding my personal knowledge of the matters set forth herein.

Ex A

2. I am the Vice-President, Finance and Assistant-Secretary for Dorel Industries, Inc. ("DI").

3. I submit this Declaration in support of DI's motion to Dismiss Plaintiffs' Seventh Amended Complaint for Lack of Personal Jurisdiction.

4. I am informed by counsel that the Seventh Amended Complaint asserts claims against DI in connection with an alleged accident that occurred on or about May 27, 2011 in the State of Nebraska. Plaintiffs allege that Franco and Deanna Riberiro purchased a Baby Trend car seat in Kearney, Nebraska to hold and transport their twin infant sons, Lucas and Alex. Plaintiffs further allege that the car seat's restraint system caused Lucas Ribeiro to become permanently injured.

5. DI is a Canadian corporation, based in Montreal, Quebec, that indirectly owns 100% stock of Maxi Miliaan B.V., a Netherlands corporation with its principal place of business in Helmond, the Netherlands. Maxi Miliaan B.V. is a 100% shareholder in Dorel Juvenile China Limited. Dorel Juvenile China Limited is a 100% shareholder in Dorel Juvenile (Zhongshan) Product Co., Ltd.

6. Dorel Juvenile China Limited is a British Virgin Islands corporation and Dorel Juvenile (Zhongshan) Product Co., Ltd. is a Chinese corporation. They were both acquired in 2014 from Lerado Group (Holding) Company Ltd. They were formerly named Lerado China Limited and Lerado (Zhongshan) Industrial Co., Ltd., respectively.

7. Maxi Miliaan B.V., Dorel Juvenile China Limited, and Dorel Juvenile (Zhongshan) Product Co., Ltd. are today wholly owned subsidiaries of DI, but DI is a corporation separate and distinct from these entities.

Ex A

8. DI heads a vertically-integrated network of subsidiaries. DI is both a Canadian operating company and a holding company of foreign subsidiaries. DI, as the parent holding company to its subsidiaries, provides basic structural services, such as arrangements for financing, insurance, and procurement. In turn, DI's subsidiaries focus their efforts on designing, manufacturing, marketing, and distributing quality products.

9. For its shareholders, DI, among other things, holds an annual meeting, prepares an annual report, distributes quarterly financial statements, and maintains a website at http://www.dorel.com containing press releases and other information. These reports and releases, which provide summaries of events of interest to stockholders, frequently refer simply to "Dorel" or "divisions" and "segments" of "Dorel" when they discuss the efforts and accomplishments of DI's operating divisions and foreign subsidiaries. Because stockholders are generally affected by, and primarily concerned with, the financial results of DI and its subsidiaries as a whole, these reports and releases do not, and have no reason to, set forth in exacting detail the precise legal description of the structural relationships between DI and its foreign subsidiaries.

10. DI consolidates its financial statements in accordance with Generally Accepted Accounting Principles. Each DI subsidiary maintains independent financial records that form the basis of that consolidation.

11. DI does not design or manufacture car seats or car seat restraint systems.

12. DI does not distribute infant car seats in Nebraska or anywhere else in the United States.

13. DI had no involvement or responsibility for the design or distribution of the car seat that is claimed to be involved in the above-captioned case.

Ex A

14. DI does not have any employees in Nebraska. DI does not maintain a registered agent for the service of process in Nebraska, it does not advertise in Nebraska, and it does not have any real property, offices, bank accounts, business records, or telephone listings in Nebraska. DI does not pay taxes in Nebraska.

15. DI does not control the day-to-day operational activities, accounting, personnel, or management operations of Maxi Miliaan B.V., Dorel Juvenile China Limited, or Dorel Juvenile (Zhongshan) Product Co., Ltd.

16. Maxi Miliaan B.V., Dorel Juvenile China Limited, and Dorel Juvenile (Zhongshan) Product Co., Ltd. do not have authority to act as DI's agent in Nebraska.

17. DI is not subject to the jurisdiction of the State of Nebraska as it does not now have, nor has it ever had, any presence therein.

18. DI is not, and never has been, licensed to do business in the State of Nebraska, and has never sought any qualification to conduct business in the State of Nebraska.

19. DI does not have, nor has it ever had, any directors, officers, employees, agents, or residents assigned to duty within the State of Nebraska.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __14th__ day of March, 2016 in __Montreal, QC Canada__ (location).

By: _____