IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANCO RIBEIRO and DEANNA RIBEIRO, as individuals and as next friends and biological parents of Lucas Ribeiro, an infant; <br><br> Plaintiffs, <br><br> v. <br><br> BABY TREND, INC., a corporation;  MARK SEDLACK,  MILLENIUM DEVELOPMENT CORP.,  INDIANA MILLS & MANUFACTURING, INC.;  LERADO GROUP CO., LTD.;  LERADO GROUP (HOLDING) COMPANY, LTD.;  LERADO (ZHONG SHAN) INDUSTRIAL CO., LTD.; LERADO CHINA LIMITED;  LERADO H.K. LIMITED;  HOLMBERGS SAFETY SYSTEM HOLDING AB;  GNOSJOGRUPPEN AB; HOLMBERGS CHILDSAFETY AB; GNOTEC REFTELE AB; MAXI MILIAAN B.V.; AND DOREL INDUSTRIES, INC., <br><br> Defendants. | 8:12CV204 <br><br> MEMORANDUM AND ORDER |

This matter is before the court on motions to dismiss the plaintiffs' seventh amended complaint for lack of personal jurisdiction filed by defendants Gnotec Reftele AB, Filing No. 341 ("Gnotec"); and Lerado (Zhong Shan) Industrial Co., Ltd., Filing No. 347; Lerado China Limited, Filing No. 348; Lerado Group Company, Ltd., Filing No. 349; Lerado H.K. Limited, Filing No. 350; Lerado Group (Holding) Company, Ltd., Filing No. 351 (hereinafter, collectively, "the Lerado defendants").[1]  This is a products liability action for damages for personal injuries.  In their seventh amended complaint, the plaintiffs allege that the restraint

---

[1] Also pending is the plaintiffs' motion for a hearing on the motion to dismiss, Filing No. 312.  The court finds a hearing is not necessary and the motion will be denied.  Also, motions to dismiss filed by defendants Dorel Industries Inc., Filing No. 394, and Maxi Miliaan B.V., Filing No. 393, allegedly successors in interest to Lerado, have been held in abeyance until the Lerado defendants' liability is resolved in the underlying action. Filing No. 424, Order.  The court has granted the plaintiffs' motion to bifurcate successor liability.  Filing No. 324, text order.  For docket-control purposes, the court finds the motions to dismiss should be denied at this time without prejudice to reassertion at the appropriate time.  The court will thereafter reset the briefing schedule with respect to those motions.

system of a car seat manufactured and/or developed by the defendants strangled and asphyxiated their child, causing the child to suffer permanent brain and neurological injuries. They assert claims for negligence, strict liability in tort, breach of express and implied warranties and violations of the Magnuson Moss Act. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

Defendant Gnotec, a Swedish company, and the Lerado defendants, Chinese companies, assert that they are not subject to the jurisdiction of this court because they lack sufficient minimum contacts with the State of Nebraska. Gnotec AB is a foreign corporation that is incorporated under the laws of Sweden, with its principal place of business in Sweden and defendant Gnotec Refele AB is its wholly-owned subsidiary. Filing No. 215, Memorandum in Support, Ex. A, Declaration of Bo Isaacson. In their Seventh Amended Complaint, the plaintiffs allege that Gnotec "acted jointly and in concert with Baby Trend regarding the design and manufacture of the 5-point harness system" in the car seat. Filing No. 328, Seventh Amended Complaint at 3. Specifically, the plaintiffs allege that Gnotec acted jointly and in concert with the other defendants to defectively "design, manufacture and incorporate into the Car Seat a 5-point harness system that utilized a 'puzzle buckle,' that in the normal use caused a deceptive false latch click." *Id.* at 6. The plaintiffs also allege that the Laredo defendants acted jointly and in concert with defendants Baby Trend, Mark Sedlacek, and Millenium Development Corporation to defectively design, manufacture, test and incorporate into the subject Car Seat a concave bottom that permitted the Car Seat to rock back and forth excessively when used in its intended manner including, but not limited to, use as an infant carrier and/or in the upright carry position and placed on a flat surface." *Id.* at 6.

I.    FACTS

A.  Procedural History

On March 31, 2015, Lerado Group and Lerado China filed a Motion to Dismiss the plaintiffs' Sixth Amended Complaint based on Fed. R. Civ. P. 12(b)(5) (insufficient service of process).  Filing No. 201.  In the same motion, the other Lerado entities—Lerado Zhong Shan Industrial Co., Ltd., Lerado Group (Holding) Company Ltd., and Lerado H.K., asserted the defense of lack of personal jurisdiction.  *Id.*, Motion at 2.

Plaintiffs thereafter requested and were granted leave to conduct jurisdictional discovery and an extension of time in which to respond to the motions to dismiss.  *See* Filing Nos. 209 & 221, Motions; Filing Nos. 212 & 224, Orders.  On several unopposed motions by the parties, the deadline for jurisdictional depositions was ultimately extended to Nov. 30, 2015, the deadline for responses to the motions extended to December 30, 2015, and the deadline to reply to the responses extended to January 11, 2016.  *See* Filing No. 225, Motion; Filing No. 226, text order; Filing No. 239, Motion; Filing No. 240 text order; Filing No. 244, Motion; Filing No. 247, text order; Filing No. 254, Motion; Filing No. 271, Order; Filing No. 315, Motion; Filing No. 317, text order.  On December 23, 2015, the plaintiffs moved, unopposed, to extend all deadlines, for leave to amend to add successor corporations as defendants, and to bifurcate.  Filing Nos. 318, 319, and 321.  The court granted the motions and the amended complaint was filed on January 7, 2016.  Filing Nos. 323, 324, and 327, text orders; Filing No. 328, Seventh Amended Complaint.  The Lerado defendants filed a reply brief to the plaintiffs brief opposing the earlier motions to dismiss on January 8, 2016.  Filing No. 330, Reply Brief.  On January 29, 2016, the court denied the then-pending motions to dismiss as moot in light of the amended pleading.  Filing No. 339, Order.  On February 12, 2016, all five Lerado entities filed individual Motions to Dismiss on the sole ground of lack of personal jurisdiction.  Filings Nos. 347-351.

The plaintiffs deposed Kuang-Neng (Luke) Cheng, as the designated Rule 30(b)(6) representative for Lerado Zhong Shan and Lerado Group (Holding) Company Ltd., on August 19, 2015, and November 11, 2015.  *See* Filing No. 366-1, Index of Evid., Affidavit of Emily Wischnowski at 1-2.  The record shows the Complaint and Summons were served on the registered agents for Lerado China Limited in the British Virgin Islands under Article 5 of the Hague Convention on June 5, 2015 and on the registered agents for Lerado Group Limited on June 2, 2015.  *See* Filing Nos. 281 & 282, summonses returned executed. Gnotec was served with process under the Hague Convention on or about April 5, 2015. Filing No. 215-1, Memorandum in Support, Ex. A, Declaration of Bo Isaacson, ("Isaacson Decl.") at 2.

B.    Evidence

In support of its motion, Gnotec submits evidence that it has no tangible or intangible property in the State of Nebraska; does not have representatives, agents, servants or employees assigned to duty in Nebraska; does not send representatives, agents, servants or employees to Nebraska for any purpose; has no agent in Nebraska upon whom service of process may be made; does not market its products in Nebraska and does not solicit business from Nebraska; is not registered to do business in Nebraska; has not entered into any contracts to provide good or services in Nebraska.  Filing No. 215-1, Isaacson Decl. at 3-5.  It contends has not engaged in any activities in the State of Nebraska or directed to the State of Nebraska so as to purposefully avail itself of the benefits and privileges of conducting business in Nebraska nor has it had any "continuous and systematic" contacts with the State.

Bo Isaacson, Chief Financial Officer of Gnotec, testified that Kendrion Holmbergs AB, now known as Gnotec Reftele AB, manufactured the buckle that is represented to be

the buckle involved in this litigation. Filing No. 361-1, Index of Evid., Deposition of Bo Isaacson, as the Rule 30(b)(6) designated representative of Gnotec Reftele AB, at 21. After manufacture, Gnotec sold the buckles to Lerado and shipped them to Lerado in China. *Id.* at 38-40, 48, 83-84, 89. Gnotec knew Baby Trend was Lerado's customer when it shipped its buckles to Lerado, but did not know that the buckles were to be delivered to that customer. *Id.* at 99-102.

The Laredo defendants also contend that no Laredo defendant is licensed to do business in the State of Nebraska, has any offices or affiliated corporate entities in Nebraska, has a designated agent for service of process within the State of Nebraska, has assigned employees or representatives to conduct business in the State of Nebraska, sent representatives to Nebraska for business purposes, solicited business from consumers in Nebraska, or advertises within the State. *See* Filing No. 201-1, Memorandum of Law, attached Declarations of Joy Ho and George Huang.

In opposition to the motions, the plaintiffs present evidence that Lerado Holding is a publicly traded organization on the Hong Kong Stock Exchange, and is, or was, the direct or indirect parent of the remaining Lerado defendants. *See* Filing Nos. 202, 203, and 204, Corporate Disclosure Statements. The record shows the defendant Lerado entities are incorporated in numerous jurisdictions, including China, Bermuda, and the British Virgin Islands. *See* Filing Nos. 134, 145, 178, 281, 282, Summonses Returned Executed. Lerado Holding is the 100% parent company of Lerado Group, who is the 100% parent company of Lerado China, who is the 100% parent company of Lerado Zhong Shan, who was the manufacturing plant for the subject car seat. Filing No. 368-1, Index of Evid., Ex. B, Deposition of Kuang-Neng (Luke) Cheng as the Rule 30(b)(6) designated representative of Lerado Holding ("Cheng Dep. 2") at 39-40.

In 2006, Lerado H.K. was an indirect subsidiary of Lerado Group. *See* Filing No. 367-1, Index of Evid., Ex. A, Deposition of Kuang-Neng (Luke) Cheng as the Rule 30(b)(6) designated representative of Lerado Holding ("Cheng Dep. 1") at 28; Filing No. 373-7, Index of Evid., Ex. J, Organizational Chart at ECF pp. 4195-4200. The Lerado manufacturing facility that produces car seats is located in Zhong Shan, China. Filing No. 367-1, Index of Evid., Ex. A, Cheng Dep. 1 at 82; Filing No. 368-1, Index of Evid., Ex. B, Cheng Dep. 2 at 89. Lerado admits that the Zhong Shan manufacturing plant manufactured the subject infant car seat. Filing No. 367-1, Index of Evid., Ex. A, Cheng Dep. 1 at 27; Filing No. 368-1, Index of Evid., Ex. B, Cheng Dep. 2 at 105. Cheng testified that the car seats were sold through Lerado China, Lerado Zhong Shan's parent company, and that payments were made to Lerado China. Filing No. 368-1, Index of Evid., Ex. B, Cheng Dep. 2 at 44-46. He further testified that he was unsure if the Lerado companies had common operations, and wasn't sure if Lerado Zhong Shan works with Lerado H.K. *Id.* at 42, 45. Lerado Holding is purely an investment company, but it claims the group's list of customers as its own. Filing No. 368-1, Cheng Dep. 2 at 33, 88. Cheng, who has worked for Lerado for 20 years, also testified he did not know who paid his salary. Filing No. 367-1, Index of Evid., Ex. A, Chen Dep. 1 at 17-18, 20.

Defendants Lerado Group and Baby Trend entered an Agreement for the manufacture of the Baby Trend Car Seats in 2004. Filing No. 373-6, Index of Evid., Ex. I, Agreement. Lerado acquired liability insurance that covered North America as required by the Agreement. Filing No. 368-1, Index of Evid., Ex. B, Cheng Dep. 2 at 51, 53. The insurance was acquired in the United States. *Id.*; Filing No. 377-1, Index of Evid., Ex. BB, Certificates of Insurance and Binders. Cheng testified that Laredo Holding was aware of the fact that it could be sued in the United States. Filing No. 368-1, Index of Evid., Ex. B,

Cheng Dep. 2 at 54. Lerado sold thousands of car seats in the United States. *Id.* at 93-94. *Id.* at 54, 67. It states in annual reports that the car seats are distributed in the United States. *Id.* at 106-08. In 2006, companies in the United States were Lerado's largest customers. *Id.* Laredo also reported its potential for liability to its shareholders in its 2014 Annual Report. *Id.* at 101-02; Filing No. 375-2, Index of Evid., Ex. O, Laredo Group (Holding) Company Limited 2014 Annual Report.

Lerado has also been actively involved in producing its own branded products for distribution nationwide under the name, "Mia Moda." Filing No. 372-1, Index of Evid., Ex. C, Deposition of Bradley Mattarocci, as Rule 30(b)(6) designate for defendant Baby Trend, ("Mattarocci Dep.") at 23. Lerado has been involved in recalls in the United States. Filing No. 376-8, Index of Evid., Ex. W, NHTSA Recall Notice; Filing No. 376-9, Index of Evid., Ex. X, Lerado Recall Spreadsheet; Filing No. 376-12, Index of Evid., Ex. AA, NHTSA Recall Information (showing 2009 nationwide recall of 5,400 Mia Moda car seats for manufacturing defects); Filing No. 368-1, Index of Evid., Ex. B, Cheng Dep. 2 at 87. Lerado sent employees to attend trade shows in the United States. Filing No. 368-1, Ex. B, Cheng Dep. 2 12-14; Filing No. 372-1, Index of Evid., Ex. C, Mattarocci Dep. at 23.

II.    LAW

A.    Waiver

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985) (noting that "the personal jurisdiction requirement is a waivable right"). Under the Federal Rules, "[a] party waives any defense listed in Rule 12(b)(2)-(5) [lack of personal jurisdiction, improper venue, insufficient process,

and insufficient service of process] by: (A) omitting it from a motion in the circumstance described in Rule 12(g)(2)." Fed. R. Civ. P. 12(h)(1)(A). Rule 12(g)(2) provides that a party making a motion under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). If a party fails to raise a challenge to personal jurisdiction in a preliminary Rule 12 motion or its first responsive pleading, such challenge is forever waived. *See, e.g., American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106-07 (9th Cir. 2000) ("A fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under Fed. R. Civ. P. 12 must be raised at the first available opportunity or, if they are not, they are forever waived."); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983) ("It is clear under [Rule 12(h)(1)] that defendants wishing to raise any of these four defenses must do so in their first defensive move, be it a Rule 12 motion or a responsive pleading."); *Myers v. American Dental Asso.*, 695 F.2d 716, 721 (3d Cir. 1982) ("The federal rules single out four defenses which must be raised by the defendant's initial responsive pleading in order to be preserved . . . [u]nless the defendant objects on those grounds at the outset, he forfeits his right later to raise them as a defense"). Moreover, the filing of an amended complaint does not revive a Rule 12(b) defense that was previously waived. *State Auto Ins. Co. v. Thomas Landscaping & Constr., Inc.*, 494 F. App'x 550, 554 (6th Cir. 2012) (affirming lower court's ruling that defendant waived personal jurisdiction defense and could not raise it in response to amended complaint); *Pruco Life Ins. Co. v. Wilmington Trust Co.*, 616 F. Supp. 2d 210, 214 (D.R.I. 2009) (noting, however, that an exception applies, however, when the availability of a Rule 12 affirmative defense first reveals itself through what is contained in an amended complaint).

The rule that the defense of lack of personal jurisdiction is waived if not made by motion or included in a responsive pleading "'sets only the outer limits of waiver; it does not preclude waiver by implication.'" *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) (quoting *Marquest Medical Prods. v. EMDE Corp.*, 496 F. Supp. 1242, 1245 n. 1 (D. Col. 1980). Asserting a jurisdictional defect in the answer does not preserve the defense in perpetuity. *Id.* The "defense 'may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct.'" *Id.* (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939)).

B.    Minimum Contacts

When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists. *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The plaintiff need only make a prima facie showing of personal jurisdiction to defeat a Rule 12(b)(2) motion to dismiss. *Id.* "A plaintiff's prima facie showing 'must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion.'" *Id.* (quoting *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). Where no hearing is held on the motion, the court views the evidence in the light most favorable to the plaintiff and resolves factual conflicts in the plaintiff's favor. *Id.*

"'Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014)). A federal court may assume jurisdiction over a defendant in a diversity action if the forum State's long-arm statute permits the exercise of personal jurisdiction and that exercise is consistent with the Due Process Clause of the

Fourteenth Amendment. [2] *Creative Calling Solutions, Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015).  Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536, has been interpreted to extend jurisdiction over non-resident defendants to the fullest degree allowed by the Due Process Clause, so the court's inquiry is limited to whether the exercise of personal jurisdiction comports with due process. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003).  Due process requires that nonresident defendants must have "minimum contacts" with the forum state such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Minimum contacts are evaluated under two theories:  (1) general jurisdiction and (2) specific jurisdiction.  *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir.

---

[2] The Nebraska long-arm statute provides as follows:

A court may exercise personal jurisdiction over a person:

(1)     Who acts directly or by an agent, as to the cause of action arising from the person;

(a)     Transacting business in this state;

(b)     Contracting to supply services or things in this state;

(c)     Causing tortious injury by an act or omission in this state;

(d)     Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e)     Having an interest in, using, or possessing real estate in this state; or

(f)     Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2)     Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. Ann. § 25-536 (2007).

2004). "The Due Process Clause permits the exercise of 'general jurisdiction' to hear 'any and all claims against' a defendant if its 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Creative Calling Solutions, Inc.,* 799 F.3d at 979 (quoting *Daimler AG,* 134 S. Ct. at 754 (internal quotation marks omitted)). "'Specific jurisdiction,' by contrast, is proper when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts." *Id.* at 979-80; *see Helicopteros Nacionales de Colombia, S. A. v. Hall,* 466 U.S. 408, 414 nn.8-9 (1984). Under both theories, "the central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." *Pecoraro,* 340 F.3d at 562; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) ("litigation results from alleged injuries that 'arise out of' or 'relate to' those activities"); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Jurisdiction is proper, "'where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state.'" *Fastpath, Inc.,* 760 F.3d at 821 (quoting *Stanton v. St. Jude Med., Inc.,* 340 F.3d 690, 694 (8th Cir. 2003)).

Minimum contacts is based on the notion that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro,* 564 U.S. 873, 881 (2011) (plurality op.);[3] *see Fastpath, Inc.,* 760 F.3d at 820. "Sufficient minimum contacts requires some act

---

[3] "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....'" *Marks v. United States,* 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15 (1976)). Under that accepted jurisprudential rule, Justice Breyer's concurrence, based on the narrowest grounds, constitutes the holding of the Court in *J. McIntyre.* *In re Chinese Manufactured Drywall Prods. Liability Litig,* 894 F. Supp. 2d 819, 847 (E.D. La. 2012) (citing cases).

by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Fastpath, Inc.,* 760 F.3d at 821 (quoting *J. McIntyre,* 564 U.S. at 880); *see Creative Calling Solutions, Inc.,* 799 F.3d at 980; *Burger King,* 471 U.S. at 474–75; *J. McIntyre Mach., Ltd.,* 564 U.S. at 880 (Kennedy, J.) (stating "[i]n products-liability cases . . . it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice'").

To assess whether a defendant has purposefully availed itself of the forum and established minimum contacts, courts examine the nature, quality, and quantity of the defendant's contacts with the forum State and the connection between the cause of action and those contacts. *Creative Calling Solutions, Inc.,* 799 F.3d at 980; *Digi-Tel Holdings, Inc. v. Proteq Telcoms, Ltd.,* 89 F.3d 519, 522-23 (8th Cir. 1996). Analyzing jurisdictional due process requirements is difficult "in that each case is unique, and thus the underlying principles are not prone to mechanical application." *Myers v. Casino Queen, Inc.,* 689 F.3d 904, 914 (8th Cir. 2012). Courts must "consider 'the totality of the circumstances in deciding whether personal jurisdiction exists.'" *Id.* (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 592–93 (8th Cir. 2011)).

"The defendant's contacts with the forum must thus be more than 'random, fortuitous, or attenuated,' and must permit the defendant to 'reasonably anticipate being haled into court there.'" *Creative Calling Solutions, Inc.,* 799 F.3d at 980 (quoting *Burger King,* 471 U.S. at 474-75 (internal quotation marks omitted)). "Minimum contacts must exist

---

Justice Breyer's concurrence provides a clear directive to the Court to apply existing Supreme Court precedent on specific personal jurisdiction and the stream-of-commerce doctrine. *Id.*

either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro*, 340 F.3d at 562.

A defendant's solicitation of a business relationship with a company incorporated in the forum State that takes place within that State is a relevant contact in determining whether its courts may exercise personal jurisdiction. *Creative Calling Solutions*, 799 F.3d at 980; *see Fastpath, Inc.,* 760 F.3d at 822-24. Further, although e-mail and telephone communications "do not themselves establish jurisdiction," they "may be used to support the exercise of personal jurisdiction." *Digi-Tel Holdings, Inc.*, 89 F.3d at 523. "Flow of a manufacturer's products into the forum . . . may bolster an affiliation germane to specific jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) (noting, however, that merely placing good in the stream of commerce does not warrant the exercise of general jurisdiction, that is, subjecting a manufacturer to suits unrelated to that activity); *see, e.g., World–Wide Volkswagen*, 444 U.S. at 297 (where "the sale of a product . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve . . . the market for its product in [several] States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others").

"The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen*, 444 U.S. at 297-98. However, "a defendant placing a product into the stream of commerce, without more, does not constitute an act purposefully directed toward the forum state." *Falkirk Mining Co. v. Japan Steel Works, Ltd*. 906 F.2d 369, 376 (8th Cir. 1990). "A manufacturer whose product ends up in the forum State on an

attenuated, random, or fortuitous basis has not purposefully directed its activities at residents of that State." *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998).

Even where a party has minimum contacts with a forum, jurisdiction can still be unreasonable. *Creative Calling Solutions, Inc.*, 799 F.3d at 981. "The Due Process Clause forbids the exercise of personal jurisdiction 'under circumstances that would offend 'traditional notions of fair play and substantial justice.'" *Id.* at 982 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)(per curiam)). To assess whether the exercise of jurisdiction over a foreign defendant is reasonable, courts consider the interests of the forum State, the burden on the defendant, and the plaintiff's interest in obtaining relief. *Id.* "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," although "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co.*, 480 U.S. at 113–15 (plurality opinion).[4]

Non-resident manufacturers can be held subject to personal jurisdiction in suits concerning products sold through intermediaries. *See, e.g., Clune v. Alimak AB*, 233 F.3d 538, 543 (8th Cir. 2000) (finding jurisdiction over Swedish hoist manufacturer who designed its construction hoists for United States market, created distribution system that brought hoist to the state, had exclusive distribution agreements with United States distributors, displayed Swedish parent's logo on products sold in United States, and conducted training

---

[4] In *Asahi Metal*, there was no majority opinion as to whether a Taiwan-based component manufacturer whose product was sold to a Japanese company and incorporated into a product that was then shipped to California had sufficient minimum contacts with California to support personal jurisdiction. *Compare Asahi Metal*, 480 U.S. at 108–13 (part II.A, plurality op.) *with id. at 116–21* (Brennan, J., concurring in part and in judgment).

seminars in United States); *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 947–48 (8th Cir. 1998) (British manufacturer subject to personal jurisdiction in personal-injury suit related to machine designed for United States market and delivered to a distributor that served the forum state); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 (8th Cir.1994) (Japanese fireworks manufacturer subject to personal jurisdiction in personal-injury suit where manufacturer "poured its products into regional distributors throughout the [United States]").

### C.    Alter Ego/Piercing Corporate Veil

A court may find personal jurisdiction over a defendant through piercing the corporate veil, in which case, the decision will rest on whether piercing the veil is proper under the law of the forum state. *Lakota Girl Scott Council, Inc. v. Harvy Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975) (affirming determination and trial court's order that parent was alter ego of subsidiary and subject to personal jurisdiction). Also, "[p]ersonal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego, even if that alter ego is another corporation." *Epps v. Steward Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (stating the "court's assertion of jurisdiction is contingent on the ability of the plaintiffs to pierce the corporate veil."). "[F]ederal courts have consistently acknowledged that it is compatible with due process . . . to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).

Under Nebraska law, the corporate entity may be disregarded and a party held to be an alter ego in circumstances where necessary to prevent fraud or injustice. *Medlock v.*

*Medlock*, 642 N.W.2d 113, 124 (Neb. 2002). The relevant factors for determining whether to declare a corporate entity a mere alter ego include the diversion of corporate funds or assets for personal use and carrying on personal business dealings of the shareholder and operations of the corporation in disregard of the corporate entity. *Id.* "The separate corporate existence of parent and subsidiary or affiliated corporations will not be recognized where one corporation is so organized and controlled and its business conducted in such a manner as to make it merely an agency, instrumentality, adjunct, or alter ego of another corporation." *Hayes v. Sanitary & Improvement Dist. No. 194*, 244 N.W.2d 505, 511 (Neb. 1976). A corporation's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears and a court will disregard a corporation's identity, or pierce the corporate veil, only where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another. *Howsden v. Roper's Real Estate Co.*, 805 N.W.2d 640, 645–46 (Neb. 2011).

      III.    DISCUSSION

          A.    Lerado defendants

      The court first finds that defendants Lerado Group and Lerado China have waived their Rule 12(b)(2) defense of lack of personal jurisdiction and have consented to this court's jurisdiction. Those defendants, having first asserted only an insufficiency of service defense, failed to amend their motion to assert any other defense during the roughly six-month period between the time service was effected and the time the plaintiffs filed their unopposed motion for leave to file a Seventh Amended Complaint. The availability of an arguable Rule 12(b)(2) defense was readily apparent in the plaintiff's earlier complaints; it was not first revealed in the amended complaint. The Seventh Amended Complaint added

alleged successor corporations as defendants, but did not alter the factual averments or the claims of the previous complaints. The personal jurisdiction defense could have been asserted in the earlier motion, or at least as soon as it became clear that the insufficiency of service defense was no longer viable. The defendants' litigation conduct also constitutes waiver. Considered in the context of the overall litigation, the Lerado defendants procedural move show submission to the jurisdiction of the court through active participation in numerous pre-trial activities and acquiescence to extensions of deadlines that contributed to delay.

Further, the court finds the plaintiffs have presented evidence that shows that the Lerado defendants are alter egos of Lerado Group and Lerado China, and of each other, and all can be considered to have waived their personal jurisdiction defense. The various Lerado affiliated corporations conduct their business in a manner that shows the entities are merely agents, instruments, adjuncts or alter egos of each other. The court hesitates to recognize the separate corporate existence of the parents and wholly-owned subsidiaries under these circumstances. The plaintiffs have presented evidence of common ownership and control and disregard of corporate formalities.

Moreover, even if the defense were not waived, the court finds the plaintiffs have shown that the Lerado defendants have sufficient minimum contacts with the State of Nebraska to satisfy Due Process. In considering the totality of the circumstances, the plaintiffs have sustained their burden of presenting a prima facie case of jurisdiction. The court finds that the Lerado defendants possess sufficient minimum contacts with Nebraska to support the exercise of specific personal jurisdiction over them.

The record shows that the Lerado defendants reaped the economic benefits of the car seat distribution to Nebraska; knew the subject car seat would be distributed in

Nebraska; consented to and produced the seat for distribution throughout the United States; purchased insurance coverage for liability in the United States; anticipated being haled into court in any states; purposefully availed themselves of the privileges of conducting business in the State of Nebraska; and used a distribution network to distribute its own branded products throughout the United States, including Nebraska. While the Lerado defendants may have no physical contacts with the forum, the evidence demonstrates they purposefully directed their activities at the forum such that they reasonably could anticipate being haled into court here, and in fact, they acknowledged knowing they could be sued in any state. Their purchase of insurance is explicit recognition of that fact.

The Lerado defendants' contacts with Nebraska are beyond mere random, fortuitous, or attenuated contacts. There is evidence that the Laredo defendants obtain a large part of their revenue from sales in the United States. They placed their car seats into the stream of commerce with the knowledge that the car seats would be sold and used in Nebraska. They actively and deliberately negotiated and consummated a contract for the sale of thousands of car seats across the United States. By entering into a contract with Baby Trend for distribution of their products, knowing that the products would be sold in Nebraska, they invoked the benefits and protections of this jurisdiction and purposefully availed themselves of the privilege of conducting activities in this state. They engaged in e-mail, telephone and in-person communications with Baby Trend in support and furtherance of their business relationship and they actively market and sell their own branded products throughout the United States. This is not the case of a single or unanticipated sale or use of a nonresident defendant's products in this state. The Lerado defendants' contacts with the State of Nebraska are far from remote or attenuated.

The alleged harm clearly occurred in Nebraska, and it was foreseeable that such harm would occur in Nebraska. Nebraska clearly has an interest in providing a forum for its citizens to recover against culpable nonresident defendants who cause injury in this state. The Laredo defendants purchased insurance to protect against that eventuality. The Laredo defendants have not shown that defending the litigation will work any particular hardship on them. The court finds sufficient minimum contacts exist between Nebraska and the Lerado defendants so that "traditional notions of fair play and substantial justice are not offended," and accordingly the Lerado defendants motion to dismiss should be denied.

B. Defendant Gnotec Reftele AB

The evidence, even viewed in the light most favorable to the plaintiffs, does not, however support a finding of specific jurisdiction over defendant Gnotec. The plaintiffs have failed to present a prima facie showing of personal jurisdiction with respect to that defendant.

Gnotec is a component manufacturer. It was not a party to the contract with Baby Trend. Gnotec sold its buckles to Laredo in China. Although Gnotec knew that Baby Trend was Lerado customer, there is no evidence that Gnotec knew that the buckles would be sent to any customer in Nebraska after it shipped them to Lerado in China. There is no evidence to suggest that any employee or agent of Gnotec sought out any relationships in Nebraska. There is no evidence that Gnotec employees e-mailed, called, or visited Nebraska. There is no evidence that Gnotec solicited Lerado or Baby Trend in connection with the sale of the buckles. Further, there is no evidence that Gnotec agreed to be directly liable to any entity, such as Lerado or Baby Trend, for consequences in the state of Nebraska.

The evidence that Gnotec has contacts with other states in connection to sales of components for Mack Trucks is of little use to this analysis. That evidence does not establish either systematic and continuous activity in Nebraska so as to support general jurisdiction, nor does it show purposeful availment and a connection to the plaintiffs' injuries so as to support specific jurisdiction. Gnotec's activities in connection with the component product that allegedly contributed to or caused the plaintiffs' injuries amounted to nothing more than simply placing a product into the stream of international commerce.

Although Gnotec might have foreseen that its product would find its way into the United States and into Nebraska, it is doubtful that it could reasonably have anticipated being haled into court here. It has not advertised, solicited any business, or otherwise sought to serve any market in Nebraska. It merely sold its component parts to Lerado in China. The part made by Gnotec was a small part of the total product, which bears the Baby Trend name. The allegedly defective product was not placed into the stream of commerce in Nebraska by Gnotec, but by Lerado. Accordingly, the court finds defendant Gnotec's Rule 12(b)(2) motion to dismiss should be granted.

IT IS ORDERED:

1. Gnotec Reftele AB's motion to dismiss for lack of personal jurisdiction (Filing No. 341) is granted;

2. Lerado (Zhong Shan) Industrial Co., Ltd.'s motion to dismiss for lack of personal jurisdiction (Filing No. 347) is denied;

3. Lerado China Limited's motion to dismiss for lack of personal jurisdiction, (Filing No. 348) is denied;

4. Lerado Group Company, Ltd.'s motion to dismiss for lack of personal jurisdiction (Filing No. 349) is denied;

5.      Lerado H.K. Limited's motion to dismiss for lack of personal jurisdiction (Filing No. 350) is denied;

6.      Lerado Group (Holding) Company, Ltd.'s motion to dismiss for lack of personal jurisdiction (Filing No. 351) is denied.

7.      Plaintiffs' motion for a hearing (Filing No. 312) is denied.

8.      Defendants Dorel Industries, Inc.'s and Maxi Miliaan B.V.'s motions to dismiss (Filing Nos. 394 & 393), presently held in abeyance, are denied without prejudice to refiling.

DATED this 1st day of June, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge