IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FRANCO RIBEIRO, as individuals and as next friends and biological parents of Lucas Ribeiro, an infant; and DEANNA RIBEIRO, as individuals and as next friends and biological parents of Lucas Ribeiro, an infant;<br><br>Plaintiffs,<br><br>v.<br><br>BABY TREND, INC., a corporation; MARK SEDLACK, MILLENIUM DEVELOPMENT CORP., INDIANA MILLS & MANUFACTURING INC., LERADO GROUP CO., LTD., LERADO GROUP (HOLDING) COMPANY, LTD., LERADO (ZHONG SHAN) INDUSTRIAL CO., LTD., LERADO CHINA LIMITED, LERADO H.K. LIMITED, MAXI MILIAAN B.V., and DOREL INDUSTRIES, INC.,<br><br>Defendants. | 8:12CV204<br><br>MEMORANDUM AND ORDER |

This matter is before the court on defendants' motions in limine to exclude the testimony of the plaintiffs' expert witnesses, Filing No. 649 (regarding Dr. Arthur Hoffman, Dr. Terri Stentz, and Dr. Kelli Herstein), Filing No. 702 (regarding Dr. Arthur Hoffman), Filing No. 711 (regarding Ted Sokol) and on the plaintiffs' motions to exclude the testimony of the defendants' experts, Filing No. 720 (regarding Dr. William Van Arsdell), Filing No. 722 (regarding James Chinni, P.E.). The parties seek exclusion of the testimony under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).

I.  **BACKGROUND**

This is a products liability action involving injuries sustained as a result of an allegedly defective infant car seat. The court has jurisdiction under 28 U.S.C. § 1332.

The plaintiffs allege the car seat's restraint system strangled and asphyxiated plaintiff Lucas Ribeiro causing him to suffer catastrophic permanent brain damage. Defendant IMMI supplied a component part for the Car Seat: the A-Lok strap adjuster. The plaintiffs allege that defendants IMMI and Lerado were negligent in the design, manufacture and testing of the subject car seat or its component parts.

The experts' reports have been disclosed and the experts' depositions have been taken.

**II.     LAW**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: "(1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003). Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Id.* at 860. An expert's testimony should only be excluded where it is "so fundamentally unsupported that it can offer no assistance to the jury." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks omitted).

The proponent of expert testimony bears the burden of providing admissibility beyond a preponderance of the evidence. *Lauzon v. Senco Prods.*, 270 F.3d 681, 686 (8th Cir. 2001). "The rule clearly 'is one of admissibility rather than exclusion.'" *Id.* (quoting *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir.1991)).

When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *United States v. Merrell*, 842 F.3d 577, 582 (8th Cir. 2016). A trial court must be given wide latitude in determining whether an expert's testimony is reliable. *See Kumho Tire,* 526 U.S. at 152. This analysis requires that the court make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology . . . can be [properly] applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

### III. Discussion

#### A. Defendants' *Daubert* Motions

##### 1. Dr. Arthur W. Hoffman, Filing Nos. 649 and 702

Dr. Hoffman is the plaintiffs' design/engineering expert. He is expected to testify with respect to design defects, manufacturing defects, inadequate warnings, and unreasonable dangerousness. The defendants challenge Dr. Hoffman's testimony, arguing his overall testing and methodology cannot be relied upon. They argue his

approach is arbitrary, non-scientific, and is not based on "any scientific methodology or any peer-reviewed approach analyzing CRS stability." They also challenge his opinions on several specific alleged defects of the car seat. Further they assert he should be barred from testifying as to adequacy of warnings, biomechanics, or defective materials because he admits he is not a warnings expert, a biomechanical expert or a materials expert.

The record shows Dr. Hoffmann has been a licensed professional engineer for almost 50 years and has been working with car seats and child safety since early in his professional career. Dr. Hoffmann worked for GM for more than 20 years and was involved in the design of the very first child safety seat in 1967. Dr. Hoffmann also designed the first rear-facing car seat, which is similar to the car seat at issue in this case. He is the author of two books on automotive seat design and car seat design. He has been retained to consult on matters for numerous car seat manufacturers.

He reviewed the physical evidence of the incident at issue, including the car seat and photographs taken at the time of the incident. He documented the car seat as it was received from the Kearney Police Department, and compared its condition to the condition of the Graco car seat that was holding Lucas Ribeiro's twin brother, Alex, at the time of Lucas's incident. He also reviewed case materials and the reports of other experts. He reviewed relevant scientific literature in forming his opinions, including reviewing data from the Consumer Product Safety Commission. His opinion was based

4

on that data and his experience in designing car seats. He rendered his opinion to a reasonable degree of engineering certainty.

The court finds Dr. Hoffmann is qualified to render the expert opinions expressed in his report and at his deposition. His conclusions are based on sound engineering principles. Any alleged criticisms of Dr. Hoffman's methodology or the testing and experimentation he performed can be pursued in cross examination. The fact that the defendants' expert witness disagrees with Dr. Hoffman's conclusions is not a reason to exclude the testimony. Dr. Hoffman has ample support for the opinions he expressed. The record shows Dr. Hoffmann has reviewed sufficient facts and data during his review of this case, his testimony is the product of reliable principles and methods, and he has reliably applied those principles and methods to the facts of the case. Accordingly, the court finds the defendants' Daubert motion should be denied.

### 2. Terry Stentz, Ph. D., and Kelli Herstein, Ph. D., [Filing No. 649](Filing No. 649).

Drs. Stentz and Herstein were asked to provide opinions regarding the subject infant carrier related to the principles of ergonomics, safety engineering, and human factors. They are expected to testify that the car seat at issue was defective and unreasonably dangerous from a safety engineering perspective. Defendant IMMI challenges their testimony, contending that Dr. Stentz and Dr. Herstein are not qualified to opine regarding the design of the A-Lok because they are ergonomists, not "experts in the designs of car seats." [Filing No. 650, at 5](Filing No. 650, at 5).

Dr. Stentz is a Board Certified Professional Ergonomist, Board Certified Professional Constructor, an industrial engineer, and an occupational health scientist with 25 years of experience in occupational safety and health. Dr. Stentz has conducted safety and ergonomics research of private industry, OSHA, the CDC, the National Institute of Occupational Safety and Health, the Federal Railroad Administration, the National Electrical Contractors Association, the Mechanical Contractors Association, the University of Nebraska-Lincoln, the Harvard School of Public Health, and various other entities and funding sources.

Dr. Stentz has seven academic degrees, including a Ph.D. in Psychological Studies and Human Performance (Human Factors) from the University of Nebraska-Lincoln, a Masters of Public Health in Occupational and Environmental Health from Harvard University, a Master of Science in Industrial and Management Systems Engineering from the University of Nebraska-Lincoln, a Master of Arts (Environmental Science) from Dartmouth College, and a Master of Arts in English (Rhetoric and Technical Composition) from the University of Nebraska-Lincoln. He has also completed post-graduate academic course work and training, including injury epidemiology coursework in 2003 at the University of Michigan.

Dr. Stentz was aeronautical engineer and intelligence officer in the United States Navy for approximately twenty-seven years before retiring as a Navy Captain in 1997. He has worked in private industry for defense and consumer products companies as a

quality and manufacturing engineer, test engineer, test engineering manager, and as a manufacturing engineering executive in product development and materials testing.

Dr. Kelli Herstein has a Ph.D. in Engineering from the University of Nebraska-Lincoln, has master and bachelor degrees in industrial engineering. She is currently finishing her Master in Public Health in environmental, agricultural, and occupational health. Dr. Herstein has over 12 years of experience in industry, computer technology services, customer support supervision, transportation and logistics, academic teaching, and research, and has been specifically analyzing car seats and car seat regulations for approximately six years.

The record shows Drs. Stentz and Herstein reviewed deposition transcripts, deposition exhibits, patents, medical records, publicly available injury data, relevant standards, and other documents relating to this litigation. They also evaluated the subject car seat and conducted various analysis and testing on exemplar car seats. They relied on the type of information routinely relied upon by experts in these fields of study.

The court finds Drs. Stentz and Herstein's opinions on design are not outside their area of expertise. The opinions on design defects and adequacy of warnings, are within the purview of safety engineering and human factors. These experts are qualified to express their opinions in that context. The defendant's criticisms go to the weight rather than the admissibility of the evidence and are properly the subject of cross-examination.

7

### 3. Ted Sokol, P.E., [Filing No. 711](#)

Dr. Sokol was disclosed by the plaintiffs as a rebuttal expert. The defendants contend that the plaintiffs are attempting to offer new, affirmative opinions via Dr. Sokol's rebuttal trestimony. They argue his testimony does not respond to or refute the defendants' expert reports. Though captioned as a *Daubert* motion, the defendants do not challenge the expert's qualifications or methodology. The defendants' argument is also raised in motions to strike Sokol's disclosure and testimony that the court addresses in other orders.

First, the defendants' argument that Sokol cannot be deposed before the deposition deadline appears moot. His deposition was noticed for March 31, 2017. Next, the court finds that IMMI's claims that the rebuttal expert disclosures are untimely or otherwise improper is unfounded. The plaintiffs designated the rebuttal expert opinion in response to the expert opinions that were disclosed by the defendants. The fact that Chinni did not specifically address the experts' opinions is of no consequence—Chinni's disclosure generally refutes the positions of the opposing experts. The plaintiffs' expert reports were disclosed prior to the deadline for supplementing expert opinions in the case, and the defendants have deposed all of the plaintiffs' experts. The defendants have not demonstrated any prejudice as the result of any purported untimely disclosure. Accordingly, the court finds the motion should be denied.

### B. Plaintiffs' *Daubert* Motions

### 1. Dr. William Van Arsdell, Filing No. 720

The plaintiffs challenge Dr. Van Arsdell's methodology of testing, contending it is not scientific or reliable. They further argue that Dr. Van Arsdell should be barred from specifically testifying to the surrogate study, the curvature of the subject CRS's base, his opinion that the crotch buckle was likely unfastened at the time of the incident, and any human factors issues.

Dr. Van Arsdell has three degrees in mechanical engineering—a B.S. degree in mechanical engineering from the University of Arizona, a Masters degree in mechanical engineering from the University of Illinois at Urbana-Champaign, and a Ph. D. in mechanical engineering from the Massachusetts Institute of Technology. He is a registered professional engineer (mechanical) and is a certified National Highway Traffic Safety Administration (NHTSA) Child Passenger Safety (CPS) Technician. He has consulted for child restraint manufacturers on new designs, new testing protocols, warnings and instructions, and improving the performance of child restraint systems. His work as a test engineer has included running crash test, sled tests, and laboratory tests on vehicles, seat belts, and child restraint systems.

Dr. Van Arsdell conducted testing of the subject car seat and the allegedly defective crotch buckle in this case. He also conducted testing with the exemplar CRS and exemplar crotch buckle. Dr. Van Arsdell considered extensive published and peer-reviewed literature, including his own publications, that deal with issues related to this case. In forming his opinions, Dr. Van Arsdell employed generally accepted

methodologies based on logical scientific and engineering analysis. He used methodologies that are used by all mechanical engineers to investigate issues similar to those involved in this case.

The court finds Dr. Van Arsdell is qualified to render the expert opinions expressed in his report and at his deposition. His conclusions are based on sound mechanical engineering principles. Any alleged criticisms of Dr. Van Arsdell's methodology or the testing and experimentation he performed are the subject of cross examination. The record shows Dr. Van Arsdell reviewed sufficient facts and data and his testimony is the product of reliable principles and methods. The surrogate fit studies are generally accepted methodologies employed by restraint and biomechanical experts. The plaintiffs' challenge goes more to the weight than to the admissibility of the evidence. The court finds Dr. Van Arsdell's testimony relates to issues in the case and would be helpful to the trier of fact.

### 2. James Chinni, P.E., Filing No. 722

Mr. Chinni is defendant IMMI's expert with respect to the A-Lok adjuster. He is also a fact witness. The plaintiffs contend Mr. Chinni's testimony fails to meet Rule 702(c), which requires that an expert's opinions be the "product of reliable principles and methods." The plaintiffs contend that Mr. Chinni based his opinions on a review of a 2013 Baby Trend car seat and an A-Lok adjuster strap provided to him by IMMI, but did no studies or tests on the 2013 Baby Trend car seat. The plaintiffs also contend

10

Chinni's opinions relating to past Chrysler recalls should be excluded as irrelevant and not applied to the facts of this case as required by Rule 702.

Chinni is the President and Principal Engineer at Engineering Answers LLC. Chinni holds a Master's Degree in mechanical engineering from Purdue University. He and has authored peer-reviewed technical papers related to occupant safety. He was employed for 25 years at IMMI in the design, development, evaluation, and testing of occupant safety systems, including child restraint systems. He has designed and developed components for child restraints and has been responsible for testing, validation, and performance evaluation of child restraint systems.

He is expected to provide testimony on the location of the A-Lok within the subject Car Seat and how users interact with it and on the A-Lok's compliance with applicable safety standards. He bases his opinions on IMMI's testing of the subject A-Lok, its role in the development of the A-Lok, and his evaluation of Dr. Hoffman's report. He employed generally accepted methodologies based on logical scientific and engineering analysis to reach his opinions. He also relied on his 25-year experience in the restraint industry, his engineering education and training, his specialized knowledge and experience with restraint systems and their components and the standards such components must meet, as well as the scientific literature, data, articles, patents, and other documentation referenced in his report.

The record shows Chinni's testimony that the A-Lok is not defective is based on sufficient facts or data and his education and experience, and is the product of reliable

engineering principles and methods. It appears that Chinni appropriately applied the principles and methods to the facts of the case. The plaintiffs' contention that there was no testing to support Chinni's conclusions can be pursued in cross-examination.

The evidence of the Chrysler minivan recall involves an integrated child seat that is built into a minivan. The plaintiffs contend that an integrated child seat that is built into a minivan and an infant carrier designed to be removed from the vehicle are not at all the same or similar. IMMI contends Chinni's testimony relating to a Chrysler minivan recall is offered to rebut the opinions of Plaintiffs' experts, and any difference between the car seat at issue in the present case goes to the weight of Chinni's testimony, not its admissibility.

The court agrees that the plaintiffs' challenge to the minivan recall evidence goes to weight, not admissibility. The plaintiffs can pursue the differences in cross examination. Accordingly,

IT IS ORDERED that:

1. The defendants' *Daubert* motions in limine (Filing Nos. 649, 702, and 711) are denied.

2. The plaintiffs' motions to exclude (Filing Nos. 720 and 722) are denied.

Dated this 17th day of April, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge